**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| UNITED STEEL ENTERPRISES, INC. | : | |
| t/a UNITED STEEL PRODUCTS CO., | : | Civil Action No. 05-5783 (JAG) |
| | : | |
| Debtor. | : | **OPINION** |
| | : | |
| JILL SKULNIK | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN SKULNIK, et al., | : | |
| | : | |
| Appellees. | : | |

**GREENAWAY, JR., U.S.D.J.**

This case comes before this Court on appeal from a final order of the bankruptcy court in Case No. 03-50284 denying Jill Skulnik's ("Appellant") motion for clarification of the "channeling injunction"[1] provision in both the Confirmation Order and the Debtor's Liquidating

---

[1] The "channeling injunction" provision is a part of the confirmed Chapter 11 Plan and reads as follows: "[i]n recognition of and exchange for the contributions made by the Non-Debtor Entities to the Excel Sale for the benefit of the Creditors of the Debtor, all Creditors of the Debtor shall be enjoined from pursuing any claims against the Non-Debtor Entities that are related to or arise from (a) the Debtor's business and/or conduct or (b) any transactions with the Debtor or (c) any transactions with the Non-Debtor Entities relating to the Debtor." (Debtor's

Plan of Reorganization ("the Plan")[2] and for other relief, pursuant to 28 U.S.C. § 158(a). For the reasons set forth below, the bankruptcy court's order will be affirmed in part and remanded in part for further findings of fact.

This Court has jurisdiction to hear this case under 28 U.S.C. § 158(a) which states, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges." The order of the bankruptcy judge in the instant case is final, and therefore reviewable, pursuant to 28 U.S.C. § 158(a)(1). "Pursuant to FED. R. BANKR. P. 8013, a federal district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Ryker v. Current, 338 B.R. 642 , 646 (D.N.J. 2006).

In bankruptcy appeals, district courts, pursuant to FED. R. BANKR. P. 8013, should uphold findings of fact unless they are clearly erroneous. FED. R. BANKR. P. 8013; Resyn Corp. v. United States, 851 F.2d 660, 664 (3d Cir. 1988). A finding of fact is clearly erroneous when, although there is evidence to support it, in consideration of the entire record, the reviewing court is left with the definite and firm conclusion that a mistake has been committed. United States v. Gypsum Co., 333 U.S. 364, 395 (1948). By contrast, in reviewing orders of the bankruptcy court, this Court reviews questions of law de novo. See In re Continental Airlines, Inc., 203 F.3d

---

Liquidating Plan of Reorganization under Chapter 11 of the Bankruptcy Code ¶ 10.04.3, attached as Exhibit C to Certification of Bernard Schenkler (hereinafter "Liquidating Plan").)

[2] The Plan is the document containing the confirmed agreement that both secured and unsecured Creditors of the Debtor agreed to as the best means of rehabilitating the Debtor and efficiently and effectively distributing its assets to satisfy claims against the estate.

203, 208 (3d Cir. 2000) (citing Manus Corp. v. NRG Energy, Inc. (In re O'Brien Environmental Energy, Inc.), 188 F.3d 116, 122 (3d Cir. 1999)).

In the instant case, Appellant is seeking review of legal conclusions made by the bankruptcy judge, and thus review by this Court is de novo.

**Background**

Jill Skulnik, the ex-wife of Howard Skulnik and the ex-sister-in-law of Martin A. Skulnik, appeals the bankruptcy court order denying her motion for clarification of the channeling injunction. She claims that in denying her motion for clarification of the channeling injunction, the bankruptcy court erred: (1) in deciding that notice of the proposed channeling injunction satisfied both the principles of due process and FED. R. BANKR. P. 2002 (c)(3); (2) in concluding that notice of the proposed channeling injunction to Howard Skulnik was adequate notice to Jill Skulnik regarding her claim against Martin Skulnik, a non-debtor entity purportedly protected by the channeling injunction; and (3) in holding that the language of the channeling injunction contained in Debtor's Liquidating Plan of Reorganization applies to bar Jill Skulnik's claim against Martin Skulnik for collection on two $500,000 promissory notes made by Martin Skulnik, payable to Howard Skulnik and transferred to Jill Skulnik by the Superior Court of New Jersey, Morris County, Family Part ("matrimonial court") to satisfy Howard Skulnik's unpaid child support and alimony obligations.

**The Debtor's Business**

Brothers Howard Skulnik and Martin Skulnik together owned and worked at several companies, including United Steel Enterprises, Inc. t/a United Steel Products ("USP") ("Debtor"), Howmar Development Corp. ("Howmar") and United Metal Warehousing, Inc.

("UMW") (collectively "the Corporations").  (Certification of Martin A. Skulnik in Opp'n to Pl.'s Mot. to Restore Matter to Active Calendar or, in the Alternative, in Support of his Cross-Mot. to Dismiss the Compl., attached as Ex. A to Aff. of Michael D. Sirota in Support of Objection to Mot. by Jill Skulnik for Clarification of "Channeling Injunction" Provision in Confirmation Order and Debtor's Liquidating Plan of Reorganization and for Other Relief 2, ¶ 2 ("Martin Skulnik Cert.")).  In all instances, Martin Skulnik was the majority shareholder and President of all of the Corporations.  (Id.)

Founded in 1968, Debtor primarily manufactured steel pallet racking for use in the retail, distribution, and archive storage industries.  (First Am. Disclosure Statement Pursuant to 11 U.S.C. § 1125 for Debtor's Liquidating Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, attached as Ex. B to Certification of Bernard Schenkler, 5 (hereinafter "First Am. Statement")).  Ultimately, Debtor grew to employ approximately 375 people in its 510,000 square foot facilities located in East Stroudsburg, Pennsylvania.  (Id.)  Debtor owned a portion of the real estate upon which it conducted its business, and leased other property from Homwar, UMW, and Martin A. Skulnik, LLC ("MASLLC").  (Martin Skulnik Cert. 2.)

Over time, Howard Skulnik became less involved in, and devoted to, Debtor and its business operations.  (Id.)  Consequently, in 2001 Martin Skulnik and Howard Skulnik agreed that Martin Skulnik would purchase Howard Skulnik's minority interests in the Corporations.  (Id.)  After months of negotiation, Howard Skulnik and Martin Skulnik entered an agreement ("buyout transaction") whereby Martin Skulnik acquired Howard Skulnik's minority shares in the Corporations.  (Id.)  Included in the buyout transaction were two promissory notes, each worth $500,000, personally guaranteed by Martin Skulnik.  (Id. at 3.)

At the time of the buyout transaction, PNC Bank National Association ("PNC") was Debtor's primary lender, holding security interests in substantially all of Debtor's assets and a mortgage lien on Debtor's real property and the Howmar property. (Id.) PNC was owed approximately $18 million at the time of the buyout transaction, guaranteed by Martin Skulnik and Howmar.[3] (Id.)

**Matrimonial Proceedings**

Howard Skulnik and Jill Skulnik entered into a final judgment of divorce on September 30, 2002. (Certification of Silvana D. Raso, ¶ 9 (hereinafter "Silvana Raso Cert.").) Howard Skulnik was obligated to pay over $10,000 a month in support of Jill Skulnik and their two minor children, as well as other obligations required by a Property Settlement Agreement. (Id.) Howard Skulnik stopped paying these obligations in October, 2003. (Id.) Thereafter, Jill Skulnik's matrimonial counsel filed a series of motions against Howard Skulnik for his failure to pay child support. (Tr.[4] 4:18- 4:19.) As a result of these motions, the matrimonial court ordered Howard Skulnik to file a complaint against Martin Skulnik for payment on the two promissory notes. (Tr. 4:20- 4:22.) A stipulation of dismissal in that case was executed on or about October 21, 2004, after the two men agreed to settle for a payment of $10,000 and the use and eventual ownership of a BMW. (Martin Skulnik Cert. 5, ¶¶ 14, 15.)

On February 14, 2005 the matrimonial court entered an order directing Howard Skulnik to re-institute the state court action for collection of payment on the promissory notes against

---

[3] PNC released Howard from his guaranty obligations, but Martin's pending obligations to Howard were subordinate to PNC's liens. (Martin Skulnik Cert. n. 2, 2.)

[4] "Tr." refers to the transcript of the hearing held before the bankruptcy court on November 7, 2005.

Martin Skulnik. (Id. at 6.) In addition to requiring the re-institution of litigation against Martin Skulnik within 30 days, the order provided that Jill Skulnik's counsel would directly assume responsibility for collection of the promissory note payments for the benefit of Jill Skulnik. (Superior Court of New Jersey Chancery Division: Family Part, Morris County, Docket No. FM-14-476-99, Civil Action Order, ¶ 6, attached as Ex. R-063 to Cert. of Silvana D. Raso (hereinafter "Civil Action Order").)

Howard filed the motion to re-institute the state court action against Martin Skulnik for payment on the two promissory notes. Martin Skulnik submitted opposition to the motion and a cross-motion to dismiss the complaint. (Silvana Raso Cert., Ex. Part 2 of 3.) Following the USP bankruptcy proceedings, Jill Skulnik learned that Martin Skulnik asserted that the channeling injunction barred any collection of payment on the promissory notes from him and filed the motion for clarification in the bankruptcy court.

**Bankruptcy Proceedings**

Debtor filed a Chapter 11 petition for bankruptcy on December 15, 2003. (Cert. of Martin Skulnik 8, ¶ 24.) The Official Committee of Unsecured Creditors concluded that the best resolution of the case was a sale of all, or substantially all, of Debtor's assets through a liquidating plan. (Id.) As a result, the assets, including real estate and improvements, owned by Debtor were offered to a number of potential purchasers. (First Am. Statement 11.) After considering various proposals, Debtor entered into an asset sale agreement with Excel Storage Products, Inc. ("Excel"). (Id. at 12.) However, the sale of Debtor's assets would not produce

sufficient revenue to satisfy PNC.[5]  To gain PNC's approval and to maximize the value achieved by the asset sale, various non-debtor entities[6] agreed to contribute real property used in the Debtor's business[7] to the proposed asset sale for the benefit of the Debtor's estate and creditors. (Id. at 13.)  In recognition of the non-debtor entities' contributions to the value of the estate, the Plan provided for a channeling injunction in favor of the non-debtor entities.  (Id. at 13-14.)  The bankruptcy court entered an order confirming the Plan on July 8, 2005.  (Order Confirming Debtor's Liquidating Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, attached as Ex. A to Certification of Bernard Schenkler ("Confirmation Order").)

On October 12, 2005, Jill Skulnik's bankruptcy counsel filed a motion for clarification of the channeling injunction.[8]  The bankruptcy court denied Jill Skulnik's motion, holding that Jill Skulnik received adequate notice of the channeling injunction.  (Tr. 22:6-22:9.)  The bankruptcy court also held that the channeling injunction precluded Howard Skulnik, and thus Jill Skulnik, from collecting the money owed on the two promissory notes from Martin Skulnik because the claim was barred under the terms of the channeling injunction.  (Tr. 22:18-22:22.)

---

[5]  PNC was Debtor's primary lender and was owed approximately $13,964,000 in direct and contingent claims as of the filing date.  (First Am. Statement 7.)

[6]  According to the plan documents, the non-debtor entities are Howmar, MASLLC, UMW, United Metal Handling, Inc., Martin Skulnik, and Nancy Skulnik.  (First Am. Statement 13.)

[7]  None of the exhibits or court records submitted by the parties indicates that Martin Skulnik owned any real property that was contributed to the asset sale.

[8]  While captioning her motion as a Motion for Clarification of the Channeling Injunction, Jill actually alleged that (1) she received insufficient notice under FED. R. BANKR. P. 2002(c)(3) and was denied due process; (2) notice to Howard was not sufficient for Jill; and (3) the language of the channeling injunction should not apply to Jill's claim against Martin.

**DISCUSSION**

  **A.  Does the Appellant Have Standing?**

  Before reaching the merits of the appeal, this Court must determine if Appellant has standing to bring her claim.  The Third Circuit has recognized that the "person aggrieved" standard determines whether a person has standing to appeal a decision of a bankruptcy court. Gen. Motors Acceptance Corp. v. Dykes (In re Dykes), 10 F.3d 184, 187 (3d Cir. 1993); In re Combustion Eng'g, Inc., 391 F 3d. 190, 214 (3d Cir. 2004).  The "person aggrieved" test is a prudential standing requirement limiting bankruptcy appeals to persons whose rights or interests are "directly and adversely affected pecuniarily by an order or decree of the bankruptcy court." In re Combustion Eng'g, Inc., 391 F.3d at 214 (citing In re Dykes, 10 F.3d at 187).  A party seeking appellate review is a "person aggrieved" if the bankruptcy court order diminishes their property, increases their burdens, or impairs their rights.  Id.

  Appellate standing for bankruptcy cases is more restrictive than Article III Constitutional standing.  Id. at 215.   The person aggrieved standard exists to insure that bankruptcy proceedings are not unreasonably delayed.  Id.   "Whether a party is defined as a person aggrieved is normally a question of fact for a district court."  Id. at 214 (citing In re Dykes, 10 F.3d at 188).

  As a result of the February 14, 2005 matrimonial order, Jill Skulnik obtained Howard Skulnik's economic rights against non-debtor entity Martin Skulnik, for collection of two promissory notes worth $500,000 each.  The bankruptcy court denied Appellant's motion for clarification of the channeling injunction in Debtor's Chapter 11 Plan, holding that the practical effect of the injunction was to enjoin Appellant's claim against Martin Skulnik.  The inability to collect on the two promissory notes "directly and adversely" affects Appellant pecuniarily by

preventing her from pursuing a claim for $1 million. Moreover, this loss of opportunity impairs Appellant's right, granted to the Appellant by the matrimonial court, to seek payment on the promissory notes. Consequently, this Court finds that Appellant has standing in this Court to appeal the bankruptcy court's decision denying her motion for clarification.[9]

**B. Did Appellant Receive Proper Notice of the Proposed Channeling Injunction?**

**1. Did Appellant Receive Proper Notice as Required by FED. R. BANKR. P. (c)(3)?**

Appellant asserts that she did not receive adequate notice of the channeling injunction, as required by either FED. R. BANKR. P. 2002 (c)(3), or under principles of due process. FED. R. BANKR. P. 2002(c)(3) provides, in pertinent part, that "the notice required under Rule 2002(c)(3) shall (A) include in conspicuous language (bold, italic or underlined) a statement that the plan proposes an injunction; (B) describe briefly the nature of the injunction; and (C) identify the entities that would be subject to the injunction." FED. R. BANKR. P. 2002(c)(3). In the instant

---

[9] The bankruptcy court transcript evinces a dispute over whether Appellant should have sought relief through an adversary proceeding instead of by motion. (Tr. 7:24-7:25.) Pursuant to FED. R. BANKR. P. 9005, FED. R. CIV. P. 61 applies to bankruptcy cases. This rule provides that

> [n]o error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

FED. R. CIV. P. 61. Regardless of whether this matter should have been brought as an adversary proceeding or filed as a motion, addressing it as a motion has neither affected the substantial rights of the parties, nor been inconsistent with substantial justice. No party raises any issues of prejudice before either the bankruptcy court or this Court. Therefore, this Court will proceed to evaluate the issues presented on appeal.

9

case, the Debtor has satisfied the criteria of the rule.

This Court's review of the Plan demonstrates that Debtor has satisfied each element of FED. R. BANKR. P. 2002 (c)(3). A quick review of the Table of Contents in the Plan reveals that Article 10 is specifically titled "Effects of Plan Upon Confirmation." (First Am. Statement, ii.) Within this article, section 10.04 is conspicuously set out as "Releases, Discharge and Injunctions" (Id.) Section 10.04.3 is titled "Non-Debtor Entities Channeling Injunction." (Id. at 20.) This highlighting satisfies FED R. BANKR. P. 2002(c)(3)(A). FED. R. BANKR. P. 2002(c)(3)(B) is satisfied as well, since the Plan includes a brief explanatory paragraph that enumerates the meaning of the channeling injunction provision. (Id. at 14.)

With respect to FED. R. BANKR. P. 2002(c)(3)(C), "[t]he requirement in Rule 2002 (c)(3)C that the notice identify the entities that would be subject to the injunction is not construed strictly. Only a reasonable identification is necessary. If reasonable under the circumstances, identification of the entities by class or category is appropriate when it is not practical to describe the entities by name." COLLIER ON BANKRUPTCY ¶ 2002.04 (Alan N. Resnick & Henry Sommer eds. 15th ed. 2006). The Plan identifies the entities that would be subject to the injunction by stating that "all Creditors of the Debtor shall be enjoined from pursuing any claims against the Non-Debtor Entities that are related to or arise from (a) the Debtor's business and/or conduct (b) any transactions with the Debtor or (c) any transactions with the Non-Debtor Entities relating to the Debtor." The elements of FED. R. BANKR. P. 2002 (c)(3)C are satisfied. Therefore, this Court finds that the Plan satisfies the requirements of FED. R. BANKR. P. 2002 (c)(3) and will affirm the decision of the bankruptcy court that Appellant received adequate notice.

**2. Did Appellant Receive Proper Notice as Required Under Principles of Due Process?**

Appellant also argues that she did not receive adequate notice under principles of due process. This argument fails. Procedural due process requires "notice reasonably calculated, under all circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." Folger Adams Security, Inc. v. DeMatteis/MacGregor, JV., 209 F.3d 252, 265 (3d Cir. 2000) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15 (1950)).  Notice can be either constructive or actual.  In the instant case, the record indicates actual knowledge of the proceedings which placed Appellant's rights at stake.

Despite not being on the service list, Appellant's matrimonial attorney received a copy of the Plan from Howard Skulnik's matrimonial attorney, Neal Fellenbaum.  (Certification of Service at as Ex, E to Cert. of Bernard Schenkler; Tr. 14:10-14:11.)  Further, Appellant does not dispute that her counsel sent an associate to observe one of the disclosure statement hearings. (Tr. 14:15-14:17.)  Appellant also concedes that her matrimonial attorney simply neglected to review the documents which contained the Plan and channeling injunction. (Tr. 14:22-14:24.) The failure of Appellant's counsel to read  the Plan does not alter the fact that Appellant was provided with a copy of the Plan, which contained conspicuous notice of the channeling injunction.

In light of these facts, this Court concludes, as did the bankruptcy court, that Appellant received actual notice of the Plan and had ample opportunity to learn of the channeling injunction.  Appellant received all the vital documents that were needed to understand how her rights were at stake and to respond appropriately.  Failing to read the documents because they

were large and complex is not a due process violation.

This Court finds that under these circumstances, Appellant received "notice reasonably calculated, under all circumstances, to apprize interested parties of the pendency of the action and afford them an opportunity to present their objections." This Court affirms the bankruptcy court's holding that Appellant received adequate notice. Because this Court has found that Appellant herself has received adequate notice, it need not address Appellant's argument that the bankruptcy court erred in finding that adequate notice to Howard Skulnik was also adequate notice to Jill Skulnik.

### C. **Did the Bankruptcy Court Properly Apply the Channeling Injunction?**

Appellant asserts that the bankruptcy court erred in concluding that the channeling injunction applies to Jill Skulnik, and therefore her claim against Martin Skulnik for payment on the two $500,000 promissory notes is barred. Appellant argues that the channeling injunction should not apply to her claim against Martin Skulnik because the claim is based on a personal obligation of Martin Skulnik, rather than an obligation derivative of a claim against Debtor.

Broad equitable power is given to the bankruptcy court by 11 U.S.C. § 105 (a), which reads,

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title shall be construed to preclude the court from, sua sponte, taking any action or making any action or making any determination necessary or appropriate to enforce or implement court orders or rules, to prevent an abuse of process.

11 U.S.C. § 105(a). The Third Circuit has noted definite limits to this equitable power: "section 105(a) has a limited scope. It does not 'create substantive rights that would otherwise be unavailable under the Bankruptcy Code.'" In re Continental Airlines, 203 F.3d 203, 211 (citing

<u>United States v. Pepperman</u>, 976 F.2d 123, 131 (3d Cir. 1992) (discussing limits to the bankruptcy court's equitable powers). The scope of this equitable power is cabined by 11 U.S.C. § 524(e).

The Third Circuit has held that while § 524(e) does not prohibit the injunction of non-debtors, it imposes conditions limiting this course of action. <u>Id.</u> at 214. <u>Continental Airlines</u> established the hallmarks of permissible non-consensual releases of non-debtors, namely fairness, necessity to the reorganization, and specific factual findings to support these conclusions. <u>Id.</u> at 213-14.

In this case, the bankruptcy court stated that the channeling injunction was necessary to the reorganization. (Tr. 20:18-20:21.) The bankruptcy court also stated that Howard Skulnik was a creditor and therefore the channeling injunction applied to him. (Tr. 22:18-22:19.) Since, as the bankruptcy court characterized it, Jill Skulnik was "parachuted in," she assumed Howard Skulnik's status with respect to the channeling injunction. (Tr.22:20-22:22.) Therefore, Jill Skulnik's claims were also enjoined. (Tr. 22:18-22:22.)

Considering the factors set forth in <u>Continental Airlines</u>, the bankruptcy court clearly addressed the first factor – the necessity to the reorganization. That is, Judge Winfield observed that

> [t]he channeling injunction was - it was a quid pro quo in the bluntest terms. In order to get sufficient assets to produce an attractive sale that netted dollars to pay, thanks [sic] God, PNC Bank off, so that there was something left later for the creditors, it was important to include assets other than the corporate Debtor assets. So, the tradeoff for that was the channeling injunction and the fact of the matter is, the creditors benefitted here.

(Tr. 21:15-21:23.)

While this statement clearly explains the necessity to the reorganization of the channeling injunction, as required by Continental Airlines, the bankruptcy court did not make sufficient findings of fact with regard to several other aspects of the channeling injunction and its application to Howard Skulnik and through him, Jill Skulnik.  For example, it is unclear from the record whether Martin Skulnik, who was listed in the Plan as a non-debtor entity, actually contributed any real property to the estate in order to increase its value, an essential element of the channeling injunction. That is, the channeling injunction was created "[i]n recognition of and exchange for the contributions made by the Non-Debtor Entities to the Excel Sale."  (Liquidating Plan ¶ 10.04.3.)  If Martin Skulnik did not, in fact, contribute any real property to the bankruptcy estate, then applying the channeling injunction to him would violate the concept of fairness required by Continental Airlines.  However, this Court cannot make a determination on the question of fairness because it lacks the facts necessary to evaluate this claim.

Further, the present factual record also fails to draw any distinction between Martin Skulnik's personal obligations to Howard Skulnik, and thus Jill Skulnik, and Debtor's obligations to Howard Skulnik.  That is, the channeling injunction applies to claims made by creditors of the Debtor against the non-debtor entities that are "related to or arise from (a) the Debtor's business and/or conduct or (b) any transactions with the Debtor or (c) any transactions with the Non-Debtor Entities relating to the Debtor."  (Liquidating Plan ¶ 10.04.3.)  The record lacks any finding relating to the question of whether Martin Skulnik's personal obligation to pay the promissory notes is governed by the channeling injunction.

These specific findings are required in order to determine if the channeling is fair to Howard Skulnik, and consequently Jill Skulnik.  Continental Airlines specifically identifies

fairness as a consideration in determining when a permanent injunction protecting a non-debtor can be employed.  203 F.3d at 214.  The practical effect of the channeling injunction in this case, the loss of Howard Skulnik's claims on the promissory notes and, consequently, Jill Skulnik's claims, against Martin Skulnik, requires specific factual findings in order to satisfy <u>Continental Airlines</u>.  This Court shall remand for further findings of fact on the two questions discussed above.

## **Conclusion**

In the instant case, the Appellant has standing to pursue this appeal.  The Plan satisfied the notice requirements of FED. R. BANKR. P. 2002 (c)(3).  Additionally, since Appellant received actual notice of the channeling injunction contained in the Plan, her due process rights were not violated.  Finally, the case is remanded to the bankruptcy court for further findings of fact, specifically (1) to determine whether Martin Skulnik contributed any real property to the value of the bankruptcy estate, and thus is a non-debtor entity covered by the channeling injunction, and (2) to determine if the channeling injunction applies to Martin Skulnik's personal obligation (i.e., the two $500,000 promissory notes) to Howard Skulnik.


   S/Joseph A. Greenaway, Jr.
   JOSEPH A. GREENAWAY, JR., U.S.D.J.


Date: December 6, 2006